UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KARUNA ANAND, M.D.,

        Plaintiff,

    v.

CALIFORNIA DEPARTMENT OF
DEVELOPMENTAL SERVICES, et al,

        Defendants.
_____/

NO. CIV.S-04-1575 LKK/GGH

O R D E R

Plaintiff was a psychiatrist employed by defendant California Department of Developmental Services. In September 2008, the parties, through their respective attorneys, notified the court that they had reached a settlement in the case. In the instant motion, defendants move to enforce the terms of the settlement, which they contend plaintiff has repudiated. The court resolves the motion on the papers and after oral argument.

**I. BACKGROUND**

Plaintiff filed this suit *in propria persona* in August 2004. Shortly thereafter, she obtained Lawrence King as counsel. Due to several delays in the parties' completion of discovery, the

1

deadlines in the case were extended several times. In April 2007, defendants moved for summary judgment. In June 2007, the parties through counsel filed a notice of settlement. A few months later, the parties notified the court that the case had not settled and jointly requested a status conference to set a new pretrial schedule. A scheduling conference was held in January 2008 and a new scheduling order was issued.

In September 2008, defendants moved again for summary judgment. Less than a week later, the parties notified the court of having settled. It is this settlement agreement that defendants seek to enforce in the instant motion. Shortly after the filing of defendant's motion, plaintiff retained replacement counsel.

Defendants have tendered evidence of the settlement negotiations between the parties. According to defendants, plaintiff's counsel[1] contacted defense counsel by e-mail in July 2008 and conveyed a settlement offer. Declaration of Scott Wyckoff In Support of Defendants' Motion to Enforce Settlement ("Wycoff Decl.") ¶ 2, Ex. A. In the e-mail, plaintiff counsel represented that the offer had been authorized by the plaintiff. Id. It also stated the periods for which plaintiff believed she was entitled to back pay. Id. Plaintiff agrees that she authorized this offer. Declaration of Faruna Anand In Opposition to Defendants' Motion to Enforce Settlement ("Anand Decl.") ¶¶ 9-10, 14.

A few days later, plaintiff's counsel sent defendants' counsel

---

[1] References to plaintiff's counsel refer to plaintiff's counsel at the time of the negotiations, Lawrence King.

2

another e-mail, specifying the dates for which plaintiff believed she was entitled to back pay. Wycoff Decl. ¶ 3, Ex. B. Plaintiff agrees that these dates reflect those that she had communicated to her attorney in a prior e-mail. Anand Decl. ¶¶ 11, 15, Ex. 2.

Settlement discussions continued between the parties' counsel in September 2008. Id. ¶ 4. According to defendants' counsel, they had reached an agreement that the settlement award would not include payment for plaintiff's annual leave. Id. The settlement terms were purportedly finalized on September 12, 2008, which specified that plaintiff would receive back pay for a total of twenty-four months and did not include payment for plaintiff's annual leave. Id. ¶ 5. According to defendant's counsel, plaintiff's counsel communicated to him that plaintiff had accepted the offer. Id. This settlement agreement was communicated to the court. Id. ¶ 6.

After doing so, the parties' counsel worked to draft a final settlement agreement. Id. ¶¶ 7-8. In November 2008, defendants' counsel received a fax from plaintiff's counsel of a settlement agreement purporting to bear plaintiff's signature. Supplemental Declaration of Scott Wyckoff In Support of Defendants' Motion to Enforce Settlement ("Supp. Wycoff Decl.") ¶ 3, Ex. E. The agreement provides that plaintiff would receive back pay for a total of twenty-four months. Id. The typed provisions are amended with handwritten changes initialed by "KA." Id. These changes increased the amount of the settlement award per year of her relevant employment periods. Id. Additionally, where the typed agreement

provided that plaintiff would receive a payment of back pay for "salary and pension," there are handwritten amendments to read, "salary, benefits and pension." Id. These amendments are also initialed "KA." Id.

Plaintiff contends that she did not authorize her attorney to enter into the settlement agreement. According to plaintiff, by her calculations she was entitled to thirty months of back pay. Anand Decl. ¶ 16. She also has declared that her attorney informed her on September 10, 2008 that defendants had rejected her offer but had proposed a counteroffer of twenty-three months. Id. ¶¶ 19-20. According to plaintiff, she did not authorize her attorney to accept this offer. Id. ¶ 21. Her attorney then asked her if she would accept an offer of twenty-seven months of back pay, to which plaintiff agreed. Id. ¶¶ 27-28. She has tendered her handwritten notes, purportedly recording this conversation, which she asserts reflect this understanding. Id. ¶ 29, Ex. 3.

Nevertheless, according to plaintiff, on September 11, 2008, her attorney sent her an e-mail "confirming" authorization to settle the case for back pay for twenty-three months. Id. ¶ 30. She has not tendered a copy of this e-mail. The next day, her counsel sent her an e-mail notifying her that defendants had agreed to settle for a payment of back pay for twenty-four months. Id. ¶ 31, Ex. 4. Three days later, she responded that she thought the agreement was for back pay for twenty-seven months. Id. She has declared that she never authorized the twenty-four month back pay settlement. Id. ¶ 36.

**II. STANDARD FOR ENFORCEMENT OF A SETTLEMENT AGREEMENT**

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987), citing Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386, 389 (5th Cir. 1984); Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1372 (6th Cir.), cert. denied, 429 U.S. 862 (1976); Autera v. Robinson, 419 F.2d 1197, 1200 (D.C. Cir.1969). The district court may only, however, enforce complete settlement agreements. Id., citing Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983); Gardiner v. A.H. Robins Co., 747 F.2d 1180, 1189 (8th Cir. 1984). "Where material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." Id. (citations omitted).

**III. ANALYSIS**

The parties do not dispute that the court has the power to enforce a complete settlement agreement nor that it must hold an evidentiary hearing if there is a material dispute as to the existence or terms of a settlement agreement. See Callie, 829 F.2d at 890; Defs.' Mot. to Enforce Settlement at 4; Pl.'s Opp'n to Defs.' Mot. at 1, 6. The parties' dispute relative to the instant motion centers on the presumption the court should give to the authority of an attorney to bind his client to a settlement. Some courts have applied a rule of federal common law that there is a presumption that an attorney has authority to settle a matter for his client, rebuttable only when the party meets a "heavy burden"

to show that the attorney was acting outside the scope of his authority. See, e.g., In re. Artha Management, Inc., 91 F.3d 326, 329 (2d Cir. 1996). Under California law, however, this presumption does not exist. Instead, because an attorney must have express authority to settle his client's claims, there is no presumption that settlement agreed to by the attorney binds his client. See Linsk v. Linsk, 70 Cal. 2d 272 (1969); see also Blanton v. Womancare, Inc., 38 Cal. 3d 396, 404 (1985). When the client alleges that her attorney settled a claim without authority to do so, the court should receive evidence to make a factual determination on the issue. See, e.g., Bice v. Stevens, 160 Cal. App. 2d 222, 226-33 (1958).

Whether the court applies federal common law or California law, therefore, determines what showing the plaintiff must make to warrant an evidentiary hearing. The Ninth Circuit has not held directly on this issue and there appears to be a split among the circuits that have. Several circuits apply the rule of federal common law when determining whether an attorney had authority to bind the client, with its presumption favoring the attorney. See, e.g., Michaud v. Michaud, 932 F.2d 77, 79 (1st Cir. 1991); Fennell v. TLB Kent Co., 865 F.2d 498, 501 (2d Cir. 1989); Garabedian v. Allstate Eng'g Co., 811 F.3d 802, 803 (3rd Cir. 1987); Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386, 389 (5th Cir. 1984)[2];

---

[2] A prior Fifth Circuit case had applied the forum state's rules regarding the authority of an attorney to settle claim on his client's behalf. Glazer v. J.C. Bradford & Co., 616 F.2d 167 (5th Cir. 1980) (per curium). This case appears not to have been

6

Larson v. Heritage Square Assoc., 952 F.2d 1533, 1537 (8th Cir. 1992). Courts have explained this use of federal common law on the basis that the parties are appearing in federal court and their "substantive rights and liabilities . . . derive from federal law." Mid-South Towing, 733 F.2d at 389.

Several circuits, however, have declined to adopt this rule. See Pohl v. United Airlines, Inc., 213 F.3d 336, 338 (7th Cir. 2000); United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000); Hayes v. Nat'l Serv. Indus., 196 F.3d 1252, 1254 (11th Cir. 1999); Makins v. District of Columbia, 277 F.3d 544, 547-48 (D.C. Cir. 2002). In Makins, 277 F.3d at 547-48, the D.C. Circuit explained that "good reasons" justified application of the forum state's laws in determining the authority of an attorney to settle a claim on his client's behalf. First, the court observed that the creation of a "federal common law" on this issue had not generated uniformity in the federal courts, but instead that there was "national disarray." Id. at 548. Thus one of the principal reasons for the other circuits' approach had not borne out.

Second, the court iterated the general rule of disfavoring of the notion of federal common law. Instead, federal courts should apply "neutral state laws that do not undermine federal interests . . . unless some statute (or the Constitution) authorizes the federal court to create a rule of decision." Id. (citations omitted). Finally, the court observed that "[t]here is also an

---

expressly overruled, although Mid-South's holding is contrary.

7

advantage for members of the bar to know that in negotiating settlements, the law governing the validity of their agreements will be the same in federal and state court." Id. For these reasons, it concluded that application of state law was preferable to federal common law when determining whether an attorney possessed his client's authority to settle the client's claims.

The Ninth Circuit has not, to the court's knowledge, held on this issue, although it has indicated its intention to follow the D.C. Circuit's approach. In Mallot & Peterson v. Dir., Office of Workers' Comp., 98 F.3d 1170, 1173 (9th Cir. 1996), cert. denied, 520 U.S. 1239 (1997), the court considered an attorney's authority to settle his client's claims in the context of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq. Under that statue, an employee "or the person's representative" may not receive compensation under the Act if he settles a claim against a third party without the approval of her employer. Id. at 1171. The court considered two questions: whether the employee's "representative" referenced in the Act included her attorney and whether an employee's subsequent ratification of a settlement entered by her representative would cause the employee to have forfeited her benefits under the Act. Id. at 1172-73.

In analyzing both questions, the court turned to California law in describing the scope and nature of an attorney's authority to settle his client's claims. Id. First, the court held that it was reasonable to interpret "representative" to exclude the employee's legal counsel in part because attorneys may not, under

California law, settle a claim without the consent of the client. Id. at 1173, citing Levy v. Superior Court, 10 Cal. 4th 578 (1995), Blanton, 38 Cal. 3d 396, and Whittier Union High Sch. Dist. v. Superior Court, 66 Cal. App. 3d 504 (1977). This standard serves to protect the client from "inordinately low settlements" and for this reason accords with the purpose of the Act. Id.

The court also relied on California law in resolving the question of whether the employee had ratified her representative's settlement. Id. The court held that the Administrative Law Judge's factual finding that the employee had not ratified the settlement was "rational" in light of the record. Id. at 1174. In a footnote, the court affirmed the ALJ's reliance on California law and rejected the counterargument that federal common law controlled the ratification issue:

> Employer contends that Federal law applies, and that under Federal law, a client is bound by the acts of her attorney. The instances in which the courts are authorized to fashion federal common law are restricted to those in which a federal rule of decision is necessary to protect uniquely federal interests, and those in which Congress has given the courts the power to develop substantive law. Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 640, 101 S. Ct. 2061, 2067, 68 L. Ed. 2d 500 (1981) (citations omitted). Neither category is relevant here. See Slavin v. Commissioner, 932 F.2d 598, 601 (7th Cir. 1991) ("Normally the authority of an agent (a lawyer is just a specialized agent) derives from state law; that the substantive dispute concerns federal law does not matter.").

Id. at 1173 n. 2. Thus, although the court held on the question of whether the ALJ's factual findings were supported by the record, it clearly did so in the context of California's rules regarding

attorneys' authority to settle claims and expressed its rejection of the "federal common law" rule. Its statements on this issue are among the strongest guidance for this court on the proper approach in the instant case. Cf. United States v. Montero-Camargo, 208 F.3d 1122, 1132 n. 17 (2000) (Ninth Circuit gives Supreme Court dicta "a weight that is greater than ordinary judicial dicta as prophesy of what the Court might hold").

Moreover, the court agrees with the reasoning behind the rejection of the federal common law approach to settlement authority. The concept of "federal common law" has come to have a more circumscribed application in recent years. See Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 640-41 (1981). The federal courts do not have authority to establish a federal common law simply by virtue of their jurisdiction or even in those areas in which Congress possesses authority to act but has not done so. Id. Instead, federal courts may only create federal common law "in such narrow areas as those concerned with the rights and obligations of the United States," where application of state law would be offensive. Id. at 641.

In some cases, federal courts may apply federal common law where there is a strong federal interest in creation of a uniform rule. See Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 711-12 (Breyer, J., dissenting)(collecting cases). This includes, for example, rules governing the tort liability of federal officials acting in their official capacities, Boyle v. United Technologies Corp., 487 U.S. 500, 505 (1988), and the

liabilities of individuals performing duties pursuant to contracts with the federal government. Yearsley v. W.A. Ross Construction Co., 309 U.S. 18 (1940). This exception is to be narrowly applied, however. For instance, the Court has held that "[c]ontroversies directly affecting the operation of federal programs," such as federal loan programs, "although governed by federal law, do not inevitably require resort to uniform federal rules." United States v. Kimbell Foods, Inc., 440 U.S. 715, 727-28 (1979). One leading commentator has summarized the Court's approach as recognizing "reasons for the presumption in favor of state law -- the inner logic of federalism, the substantive advantages of local solutions to local problems, the protection of important substantive state policies, and the order and certainty of well developed bodies of state law," which only warrant displacement by federal common law where there is a "defined, important federal interest" at issue. 19 Charles Allen Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4514 (2009).

With these principles in mind, the court conforms to the apparent position of the Ninth Circuit, that application of a federal common law rule in this context is unwarranted. The courts that have adopted this rule appear to have done so in cases where the claims arise from federal law and for the purpose of encouraging uniformity and consistency. See Mid-South Towing, 733 F.2d at 389. However, the Supreme Court has made plain that these justifications are not sufficient to supplant application of state substantive law. Texas Indus., 451 U.S. at 640-41; Empire

Healthchoice Assurance, 547 U.S. at 699-700. Instead, there must be a particular and significant federal interest served by the application of federal law. Id.; Boyle, 487 U.S. at 505. Here, the court is unable to discern one. The federal government appears to possess no special interest in the evidentiary presumption given to attorneys' authority to settle his client's claims, regardless of the nature of the suit and the identity of the parties. While uniformity is often a guiding concern in the court's decisions, there appears no particular federal interest served by national consistency among the federal courts on this issue more so than the virtue of uniformity between a federal court and the courts of its forum state.

Moreover, states have developed bodies of law on the issue that the federal courts may draw upon, which suggests federal courts would be better served by turning to those bodies of law rather than crafting a new federal common law from whole cloth. See Wright, Miller & Cooper § 4514. Finally, as the Seventh Circuit observed, the attorney-client relationship is simply a form of agency, Slavin v. Commissioner, 932 F.2d 598, 601 (7th Cir. 1991), and federal courts typically rely on a state's agency laws when those issues arise. See, e.g., C.A.R. Transp. Brockerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 779 (9th Cir. 2000). There appears no compelling reason why the question of authority to settle a claim should be treated differently.

Therefore, the court applies California law in determining whether an evidentiary hearing is merited on the issue of plaintiff

counsel's authority to settle her claims. As explained above, counsel must have "specific authorization" to enter into a settlement on his client's behalf. Bice, 160 Cal. App. 2d at 231-32; see also Whittier Union High Sch. Dist., 66 Cal. App. 3d at 508-509. Where a party contends that her attorney acted without authorization in settling or dismissing her claims, the court must conduct a factual inquiry into whether the attorney acted with her authority. See Blanton, 38 Cal. 3d at 403-404; Whittier Union High Sch. Dist., 66 Cal. App. 3d at 508-509; Romadka v. Hoge, 232 Cal. App. 3d 1231, 1236-37 (1991). Under Circuit precedent, this factual inquiry must take the form of an evidentiary hearing, Callie, 829 F.2d at 890, where plaintiff must bear the burden to show that her previous attorney did not have her authority to settle her claims or that she should not otherwise be bound by her attorney's acts through her subsequent ratification. Callen v. Pennsylvania R.R. Co., 332 U.S. 625 (19480 ("One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity. . . .").

**IV. CONCLUSION**

For the reasons stated herein, the defendants' motion to enforce the settlement agreement is DENIED.

An evidentiary hearing on the issue of plaintiff's prior counsel's authority to settle plaintiff's claims is SET for July 2, 2009 at 10:00 AM.

IT IS SO ORDERED.

DATED: June 2, 2009.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

13